**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Mark Gonzales,
Plaintiff,
v.

Sakura Group, Yugen Kaisha, and Sakura International Co. Ltd.,
Defendants.
________________________///

Case No.:

**JURY DEMANDED**

# COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, PUNITIVE DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Mark Gonzales (hereinafter "Plaintiff" or "Mark"), by and through the undersigned attorneys, hereby sues Defendants Sakura Group, Yugen Kaisha, (hereinafter "SG"), and Sakura International, Co. Ltd. (hereinafter "SI"; SI and SG are collectively referred to hereinafter as "Sakura") for damages, declaratory relief, injunctive relief, punitive damages, and attorneys' fees, litigation costs and expenses and states as follows:

## JURISDICTION, VENUE, AND THE PARTIES

1. This is an action for, among other things, money damages in excess of $75,000 exclusive of costs and attorney's fees.

2. Plaintiff Mark Gonzales is natural person residing in New York County in the State of New York.

3. Defendant SG is a Japanese limited liability company whose primary business is management and sales of trademark rights and copyrights. **Exhibit 1.**

4. Defendant Si is a Japanese stock company whose primary business is the sale, import and export of clothing and accessories. **Exhibit 2**.

5. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 1332 and pursuant to a forum selection clause in the contract that forms part of the basis for this action.

6. Venue is proper in this court under 28 U.S.C. § 1391.

## BACKGROUND

7. Plaintiff Mark Gonzales is a legendary professional skateboarder, and world-renowned artist, performer, poet, and writer.

8. In skateboarding circles, Mark is known as "the godfather of modern street skateboarding" and is recognized as the # 1 most influential skateboarder of all time. **Exhibits 3, 4**.

9. Mark's talent as a professional skateboarder has been featured in numerous videos, and he has also appeared in films and movies. **Exhibit 5**.

10. Mark is also a prolific artist and his works lines the walls of celebrities and politicians, such as President Donald Trump and Sean "P-Diddy" Combs, and his sculptures are featured in the stores of popular skateboarding brand Supreme in Paris, London, New York, San Francisco, Tokyo, Osaka and Nagoya. **Exhibits 6**, **7.**

11. In addition, Mark has published several books of poetry, artwork, and photography. **Exhibit 8, 9, 10.**

12. Mark's most recognizable designs are his iconic "angel" and "shmoo" characters and his unique signature:

| Angel design | Mark's Signature | Shmoo design |
|---|---|---|
| | MarkGonzales | |

13. For many years, Mark has granted non-exclusive licenses to third parties to use his name, unique signature, artwork and designs, such as Angel and Shmoo and many, many others, in exchange for payment of royalties. **Exhibit 11.**

14. Goods bearing Mark's designs are sold throughout the world and are especially popular in Asia.

15. Defendants are in the business of intellectual property licensing; they obtain intellectual property licenses from artists like Mark for the purpose of sublicensing to third parties who manufacture and sell goods bearing the designs in exchange for paying Defendants a royalty.

16. Upon information and belief, Taro Ideriha solely controls SG and SI and directs all of their actions.

17. Unbeknownst to Mark, Ideriha, has a dubious reputation for persuading artists into signing disadvantageous licensing agreements through fraudulent and misleading representations.

18. For example, in 2005, the Administrator of the Estate of artist Jean-Michel Basquiat[1] sued Si for fraud in this judicial district alleging that Ideriha made false and misleading representations to induce the Estate into granting Si a license to Jean-Michel Basquiat's intellectual property.

19. In that case, the jury found SI liable and awarded the Estate $2,380,000. This Court entered judgment against SI on April 19, 2006. **Exhibit 13**.

20. Mark would never have done business with Defendants had he known about their dealings with Basquiat.

## THE 2000 MPSA

21. In or around October 2000, Si entered into a Music Production Service Agreement (the "MPSA") with Mark *vis a vis* Cujo Arts and Literature, Inc. ("Cujo")[2] and pro skateboarder and musician Tommy Guerrero ("Tommy"). **Exhibit 15**.

22. Per the MPSA, Mark (via Cujo) and Tommy agreed to create original an album (the "Album") for Si that consisted of music and lyrics (the "Compositions") and sound recordings (the "Recordings") of their performance of the Compositions. **Exhibit 15** ¶ 1.1.

[1] See Exhibit 12.
[2] Cujo Arts and Literature, Inc. was a Nevada corporation formed in April 2000 by Mark Gonzales and his ex-wife, Lauren Curry. Cujo was registered to do business in California as of December 2000, but it surrendered its right to do business in California as on January 2009. The Nevada corporate records show that it has not filed an annual report since April 29, 2005 and its status as of the date of this Complaint is listed as "permanently revoked." Comp. Exhibit 14.

23. Mark and Tommy also agreed to provide Si with original artwork for the album cover (the "Cover Art"). **Exhibit 15** ¶ 1.1.

24. The MPSA provided that the copyrights in the Compositions and Recordings "shall be transferred" to Si "at the time of delivery. **Exhibit 15** ¶ 2.1.

25. The MPSA provided that Si would have worldwide, "exclusive rights to reproduce and sell" "on T-shirts, etc." any and all Cover Artwork "and/or photographs created in conjunction" with the Cover Art for the purpose of promoting the Compositions, Recordings and the "Artists" (Mark and Tommy). **Exhibit 15** ¶ 2.3.

26. For the Compositions, Mark wrote the lyrics and Tommy composed the music, and they jointly created the Recordings of their performance of the Compositions.

27. The Cover Art is comprised of Mark's original artwork and drawings superimposed on photographs taken by third-party, Gabe Morford.

28. Mark and Tommy provided Si with the Compositions, Recordings and Cover Art in late November 2000.

29. The Cover Art that Mark and Tommy provided to Si included the the following images:



| <A> | <B> | <C> | <D> | <E> | <F> |
|---|---|---|---|---|---|

30. Since the time of the contract in October 2000 through the present day, Si has exceeded the scope of the MPSA License by reproducing the Cover Art on Merchandise for purposes other than promoting the Album.

31. After the parties fully performed the MPSA, sometime in January 2001, Si offered to pay Mark to provide additional original works of art that incorporated the lyrics for each of the Compositions (the "for Lyric Artwork").

32. Mark agreed to create the Lyric Artwork.

33. Mark and Si did not enter into any written agreement regarding the Lyric Artwork.

34. In May 2001, Mark delivered to Si the Lyric Artwork for six songs.

35. Si paid Mark for creating the Lyric Artwork.

36. Also in or around January 2001, Si asked Mark to create a derivative work based on Mark's iconic "angel" or "bird" design (the "Derivative Bird").

37. Mark agreed to do so and provided the Derivative Bird to Si.

38. Si did not pay Mark for creating the Derivative Bird, and the parties did not into any written agreement relating to the Derivative Bird.

## 2010 LICENSING AGREEMENT

39. On or in December 2010, Mark and SG entered into a Licensing Agreement (the "LA"). **Exhibit 16.**

40. The LA gave SG a limited license (the "Limited License") to use certain artwork and/or designs that were pre-approved by Mark (the "Approved MG Designs") exclusively in Asia (the "Territory") only on or in connection with clothing and goods other than footwear and goods similar to those manufactured and sold by Mark's longtime sponsor, adidas International BV and its affiliates, subsidiaries, distributors, or licensees (the "Approved Goods"). **Exhibit 16 ¶¶** 1, 2.

41. The Limited License did not include the right to make derivative works.

42. The LA permitted Mark to withhold approval in his sole and absolute discretion. **Exhibit 16** ¶ 3.

43. The initial term of the LA was for one year but could be renewed for up to ten continuous years on the same terms unless "amicably" renegotiated "by bipartite agreement." **Exhibit 16** ¶ 10.

44. Per paragraph 11, SG was allowed to obtain intellectual property registrations in Asia for Approved MG Designs in its own name but required SG to transfer any such registrations to Mark upon his request. **Exhibit 16** ¶ 11.

45. The Limited License included the right to grant sub-licenses so long as SG ensured that its sublicensees were bound by and adhered to the terms of the LA. **Exhibit 16** ¶ 4.

46. The terms of the LA required payment of an Annual Royalty of $40,000 USD (the "Annual Royalty") to Mark as consideration for the Limited License. **Exhibit 16** ¶ 6.

**COUNT I: BREACH OF CONTRACT – LICENSING AGREEMENT**
**(FAILURE TO PAY ANNUAL ROYALTIES)**
**(AGAINST SG)**

47. Plaintiff Mark Gonzales realleges and incorporates by reference the allegations in paragraphs 1-6 (Jurisdiction and Venue), 7-20 (Background), 39-46 (2010 Licensing Agreement) as if set forth fully herein.

48. In exchange for the Limited License, SG was required to pay an Annual Royalty to Mark of $40,000 USD.

49. The LA was signed on December 8, 2010 and expired on December 31, 2021.

50. As of the date of this Complaint, SG has only paid the Annual Royalty for 2011-2013.

51. SG breached the LA and caused Mark damage by failing to pay the Annual Royalties by failing to pay the Annual Royalty for each year the LA was in effect.

Wherefore, Plaintiff Mark Gonzales respectfully requests that this Court find that Defendant Sakura Group breached the Licensing Agreement and failing to pay all Annual Royalties in accordance with its terms, and enter judgment awarding to Plaintiff:

a. Money damages in the amount of $320,000, plus pre-and post-judgment interest at the statutory rate accruing from 2014 to the present;

b. Attorney's fees and costs as provided for in the LA; and

c. Any other relief this Court deems just and proper.

**COUNT II: BREACH OF CONTRACT – LICENSING AGREEMENT (FAILURE TO PAY ANNUAL ROYALTIES) (AGAINST SI)**

52. Plaintiff Mark Gonzales realleges and incorporates by reference the allegations in paragraphs 1-6 (Jurisdiction and Venue), 7-20 (Background), 39-46 (2010 Licensing Agreement) as if set forth fully herein.

53. SG granted a sublicense to Si in 2010.

54. As a sublicensee, Si was bound to abide by the terms of the LA, including the obligation to pay an Annual Royalty of $40,000 USD.

55. As of the date of this Complaint, Mark has not received an Annual Royalty for Si's sublicense for the years 2011-2013.

56. Si has breached the terms of its sublicense of the LA by failing to pay the Annual Royalty for years 2011 through 2013, and as a result Mark has been damaged.

Wherefore, Plaintiff Mark Gonzales respectfully requests that this Court find that Defendant Sakura International, Co., Ltd. failed to pay all Annual Royalties for the sublicense granted to Sakura International Co., Ltd. for the years 2011 through 2013 in breach of the Licensing Agreement enter a judgment against them jointly and severally awarding to Plaintiff:

a. Money damages in the amount of $120,000, plus pre-and post-judgment interest at the statutory rate accruing from 2011 to the present;

b. Attorney's fees and costs and litigation expenses pursuant to the terms of the LA; and

c. Any other relief this Court deems just and proper.

## COUNT III: BREACH OF CONTRACT – LICENSING AGREEMENT (FAILURE TO PAY ANNUAL ROYALTIES) (AGAINST ALL DEFENDANTS)

57. Plaintiff Mark Gonzales realleges and incorporates by reference the allegations in paragraphs 1-6 (Jurisdiction and Venue), 7-20 (Background), 39-46 (2010 Licensing Agreement) as if set forth fully herein.

58. Pursuant to the terms of the LA, Defendants granted sublicenses to at least fourteen sublicensees (the "3P Sub-Licensees") in or about 2010.

59. Upon information and belief, the sublicenses that Si and SG granted to the 3P Sub-Licensees were in effect from 2011 through December 31, 2021.

60. Defendants and the 3P Sub-Licensees were bound to abide by the terms of the LA, including the obligation to pay the Annual Royalty.

61. Defendants SG and SI, as licensors, were required to ensure that the 3P Sub-Licensees abided by the terms and conditions of the LA, including the obligation to pay the Annual Royalty.

62. As of the date of this Complaint, Mark has not received an Annual Royalty for the licenses granted to any of the 3P Sub-Licensees for the years 2011-2021.

63. Upon information and belief, the 3P Sub-Licensees paid royalties to Defendants, yet Defendants failed to pay over to Mark the Annual Royalties for the 3P Licensees.

64. By failing to collect and pay to Mark the Annual Royalty from each of their the 3P Sub-Licensees, SG and Si have breached the terms the LA, and as a result Mark has been damaged.

Wherefore, Plaintiff Mark Gonzales respectfully requests that this Court find Defendants in breach of the LA, and enter judgment against them, jointly and severally, and award Plaintiff:

a. Money damages in the amount of $6,660,000, plus pre-and post-judgment interest at the statutory rate accruing from 2011 to the present;

b. Attorneys' fees and litigation expenses pursuant to the terms of the LA; and

c. Any other relief this Court deems just and proper.

**COUNT IV - BREACH OF CONTRACT – LICENSING AGREEMENT**
**(FAILURE TO TRANSFER IP REGISTRATIONS TO MARK)**
**(AGAINST SG)**

65.     Plaintiff Mark Gonzales realleges and incorporates by reference the allegations in paragraphs 1-6 (Jurisdiction and Venue), 7-20 (Background), 39-46 (2010 Licensing Agreement) as if set forth fully herein.

66.     The terms of the LA permitted SG to obtain intellectual property registrations in Asia for Approved MG Designs in SG's own name, but required SG to transfer any such registrations to Mark upon his request.

67.     SG obtained numerous intellectual property registrations in Asia for Mark's intellectual property (the "Asian IP Registrations") in its own name and/or in Si's name.

68.     Mark has repeatedly requested that SG comply with the terms of the LA and transfer the Asian IP Registrations to Mark, but SG refuses to do so.

69.     SG's refusal to transfer the Asian IP Registrations to Mark is a breach of the LA and has caused Mark damage.

Wherefore, Plaintiff Mark Gonzales respectfully requests that this Court find that SG's refusal to transfer the Asian IP Registrations to Mark is a breach of the LA and enter judgment against SG and Plaintiff's favor:

a.      Compelling SG to transfer any and all registrations for the Asian IP Registrations in its and Si's names to Plaintiff and enjoining SG from using, licensing or sublicensing the Asian IP Registrations in any way;

b.      Disgorging SG of all revenues generated that are in any way related to the Asian IP Registrations;

c. Awarding compensatory, special, consequential, incidental and punitive damages in an amount to be determined at trial;

d. Awarding Plaintiff his costs, attorneys' fees and litigation expenses pursuant to the terms of the LA;

e. Awarding Plaintiff any other relief this Court deems just and proper.

## COUNT V – BREACH OF CONTRACT – LICENSING AGREEMENT (FAILURE TO CEASE USE AND LICENSING) (ALL DEFENDANTS)

70. Plaintiff Mark Gonzales realleges and incorporates by reference the allegations in paragraphs 1-6 (Jurisdiction and Venue), 7-20 (Background), 39-46 (2010 Licensing Agreement) as if set forth fully herein.

71. The License Agreement expired on December 31, 2021.

72. Once the License Agreement expired, Defendants no longer had any right to use or sublicense the MG Designs.

73. Despite the expiration of the License Agreement, Defendants have wrongfully continued to use, sublicense and collect royalties from 3P Sub-Licensees in violation of the LA, causing damage to Mark.

Wherefore, Plaintiff Mark Gonzales respectfully requests that this Court find that Defendants Sakura Group and Sakura International Co., Ltd. are continuing to use and sublicense are wrongfully refusing to refrain from using and licensing the MG Designs in breach of the LA, and enter judgment against SG and Si, jointly and severally, as follows:

a. Enjoining Defendants' use and licensing of the MG Designs;

b. Awarding Plaintiff money damages in an amount to be determined at trial;

c. Awarding Plaintiff punitive damages;

d. Awarding Plaintiff his costs, attorneys' fees and litigation expenses pursuant to the terms of the LA;

e. Awarding Plaintiff any other relief this Court deems just and proper.

## COUNT VI DECLARATORY JUDGMENT – COPYRIGHT OWNERSHIP (AGAINST ALL DEFENDANTS)

74. Plaintiff Mark Gonzales realleges and incorporates by reference the allegations in paragraphs 1-6 (Jurisdiction and Venue), 7-20 (Background), 21-38 (MPSA) as if set forth fully herein.

75. Plaintiff independently created the Derivative Bird and the Lyric Artwork.

76. The Derivative Bird and the Lyric Artwork are original works of authorship and protected by copyright.

77. As the creator of the Derivative Bird and the Lyric Artwork, Mark is the owner of the copyright.

78. Plaintiff provided the Defendants with copies of the Derivative Bird and the Lyric Artwork.

79. Plaintiff did not license or assign any copyrights in or to the Derivative Bird and the Lyric Artwork to Defendants.

80. Defendants claim that Si owns all rights in and to the Derivative Bird and the Lyric Artwork and have been using and commercially exploiting the rights in them for profit.

81. Plaintiff has requested that Defendants cease and desist from all use and commercial exploitation of the Derivative Bird and Lyric Artwork, but Defendants refuse.

82. There is a genuine dispute among the parties as to their respective rights in or to the Derivative Bird and the Lyric Artwork.

Wherefore, Plaintiff Mark Gonzales requests that this Court take jurisdiction and enter a judgment declaring that Defendants do not own any intellectual property rights in the Derivative Bird or the Lyric Artwork, and any further relief deemed just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all counts so triable.

Dated: October 20, 2022.

Respectfully submitted,

Law Offices of Steven D. Isser

By:___________________________

Steven D. Isser. Esq.
305 Broadway, 7th Floor
New York, New York 10007
(212) 812-5096
sisser@iserlaw.com
*Attorneys for Plaintiff Mark Gonzalez*

and

*(to be admitted pro hac vice)*

Suzette M. Marteny Moore
S. Moore Law PLLC
2690 S. Combee Rd.
Lakeland, FL 33803
Main: 863-229-2140
Fax:   863-213-5285
Email 1: S.Moore@SMooreLaw.com
Email 2: Eservice@SMooreLaw.com

*Attorneys for Mark Gonzales*